**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Jorge Alberto Arvizu,

Defendant.

No. CR-25-03318-001-TUC-JCH (MSA)

**REPORT AND RECOMMENDATION**

Defendant Jorge Alberto Arvizu is charged with unlawful possession of a firearm by a convicted felon. He moves to suppress the evidence against him on the ground that it was obtained in violation of the Fourth Amendment. For the following reasons, the Court will recommend that his motion be granted.[1]

**Factual Findings**

In June 2025, Officer Eliezer Lopez was on a nighttime patrol of a high-crime area in Tucson when he saw a vehicle drop off a woman near an intersection. (Doc. 56 at 6–7.) Officer Lopez knew that the area was commonly used for prostitution, and he noticed the driver of the vehicle, later identified as Defendant, duck down in response to seeing his marked patrol car. (*Id.* at 7, 9.) His suspicions aroused, Officer Lopez watched the vehicle approach the intersection and roll through a stop sign. (*Id.* at 7–8.) Officer Lopez caught up to the vehicle and ran its plates, discovering that the registration had expired. (*Id.* at 8.) He then initiated a traffic stop based on the stop-sign violation. (*Id.* at 36–37.)

---

[1] Given the firm trial date of October 13, 2026, the deadlines to object to this report and respond to objections will be shortened from 14 days to 7 days.

As Officer Lopez walked up to the vehicle, he saw Defendant light a cigarette and begin blowing smoke rapidly. (*Id.* at 8.) This was significant to Officer Lopez because, in his experience, some impaired drivers use cigarette smoke to mask the odor of intoxicants like marijuana or alcohol. (*Id.* at 8–9.) Officer Lopez introduced himself and then asked about the woman Defendant had dropped off. (Pl.'s Ex. 3 at 0:07–0:14.) Defendant answered that the woman was his friend and asked if she was the reason he had been pulled over. (*Id.* at 0:14–0:19.) Officer Lopez responded "yeah" and then asked for Defendant's identification. (*Id.* at 0:19–0:24.) Defendant produced his driver's license, protesting that he had merely gone to eat with a friend and had done nothing wrong. (*Id.* at 0:24–0:39.) Officer Lopez then asked to see the registration and proof of insurance. (*Id.* at 0:39–0:40.) As Defendant searched for the documents, Officer Lopez noticed a partially burned joint on the center console, which he suspected contained marijuana. (Doc. 56 at 10, 43.) Officer Lopez inquired whether there were any firearms in the vehicle, and Defendant responded that there were not. (Pl.'s Ex. 3 at 0:44–0:47.) He further inquired as to the name of the woman, and Defendant responded "Vanessa." (*Id.* at 1:10–1:13.) Defendant eventually produced proof of insurance but not a registration. (Doc. 56 at 9.) Officer Lopez took the documents and returned to his patrol car, where he radioed for another officer and ran a check on Defendant's license. (Doc. 56 at 10; Pl.'s Ex. 3 at 1:30–3:25.)

At this point, Officer Lopez had decided, based on the partially burned joint, to remove Defendant from his vehicle on suspicion of marijuana-impaired driving. (Doc. 56 at 10.) During the initial part of the encounter, Officer Lopez did not smell the odor of marijuana, nor did he see a red light or smoke emanating from the partially burned joint. (*Id.* at 44–45.) He also did not see any signs that Defendant was impaired, including erratic driving, a flushed face, slurred speech, bloodshot eyes, or difficulty concentrating. (*Id.* at 37–38.) Officer Lopez's report does describe Defendant as "frantic." (Pl.'s Ex. 1.) But the bodycam video shows that Defendant was merely upset (but still compliant) because he thought he had been pulled over for dropping off a friend. "Frantic" is not a reasonable description of his demeanor. Officer Lopez's report further asserts that

Defendant "paused to think about" the name of the woman he had dropped off (suggesting that he was not being honest about knowing her). (*Id.*) But the bodycam video shows that Defendant answered immediately and without hesitation. (Pl.'s Ex. 3 at 1:10–1:13.) The Court rejects Officer Lopez's "frantic" and "pause" observations because they are contrary to the video evidence.

After running the check, which confirmed a valid license, Officer Lopez returned to Defendant and ordered him to exit his vehicle. (Doc. 56 at 11.) Defendant protested, asking for an explanation, but complied moments later. (Pl.'s Ex. 3 at 3:37–4:02.) Officer Lopez then directed Defendant to walk to the front of the patrol car. (*Id.* at 4:02–4:04.) Defendant complied, asking again why he had to exit his vehicle. (*Id.* at 4:04–4:10.) Near the patrol car, Officer Lopez responded that it was because of the "joint in [the] center console" and because it was illegal to "smoke and drive." (*Id.* at 4:10–4:16.) Defendant denied having smoked marijuana and requested to speak to a supervisor. (*Id.* at 4:15–4:25.) By then, Sergeant Mark Holderness (the supervisor) had arrived. (Pl.'s Ex. 4 at 0:30–0:35.) Sergeant Holderness stood with Defendant near the patrol car while Officer Lopez returned to Defendant's vehicle to inspect the joint. (Doc. 56 at 12.)

As of this point, Officer Lopez had seen no signs of impairment from Defendant. (*Id.* at 47.) In addition to the lack of cues mentioned above, Officer Lopez did not observe Defendant having trouble balancing as he exited his vehicle and walked to the patrol car. (*Id.*)[2]

Officer Lopez reached into Defendant's vehicle, picked up and smelled the joint to confirm that it contained marijuana, and then radioed for an officer who was certified to investigate marijuana-impaired driving. (Pl.'s Ex. 3 at 4:35–5:01; Doc. 56 at 21.) Officer Lopez returned to his car to put on gloves. (Pl.'s Ex. 3 at 5:01–6:46.) He then confronted

[2] The transcript of the evidentiary hearing includes the following exchange: "Q. Now, to that point, you had observed no signs of impairment, right? A. No." (Doc. 56 at 47.) The undersigned was present for this testimony, and it was clear from the flow of the exchange that Officer Lopez meant that he did not observe signs of impairment, not that he disagreed with the premise of the question that there were no signs of impairment. This understanding is confirmed by Officer Lopez's testimony that he did not see any specific signs of impairment such as a flushed face, slurred speech, uncoordinated movements, etc.

Defendant with the joint from the center console, retrieved an evidence bag, and returned to search Defendant's vehicle. (*Id.* at 6:46–8:40.) A few minutes into his search, Officer Lopez found a firearm in between the driver's seat and center console. (*Id.* at 11:35–11:50.) He ran a check on the firearm's serial number to confirm that it was not stolen and then ran a check to determine whether Defendant was a prohibited possessor. (Doc. 56 at 16–17.) The second check confirmed that Defendant was a prohibited possessor due to multiple felony convictions, so Officer Lopez placed Defendant under arrest for prohibited possession of a firearm. (*Id.* at 17.)

**Discussion**

Defendant argues that the traffic stop violated the Fourth Amendment in two ways. First, he argues that the officers did not have probable cause to search his vehicle. Second, he argues that the officers unlawfully extended the stop without reasonable suspicion of a crime separate from his traffic offense. Both arguments are persuasive.

**I. The search of Defendant's vehicle was not supported by probable cause.**

**A. Legal Principles**

"Generally, warrantless searches are unreasonable under the Fourth Amendment, 'subject only to a few specifically established and well delineated exceptions.'" *United States v. Barry*, 140 F.4th 1105, 1108–09 (9th Cir. 2025) (quoting *United States v. Estrella*, 69 F.4th 958, 964 (9th Cir. 2023)). "The government bears the burden to demonstrate that an exception to the warrant requirement applies." *United States v. Parkins*, 92 F.4th 882, 888 (9th Cir. 2024) (citing *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016)). Here, the Government relies on the automobile exception. (Doc. 49 at 4–6.) This exception permits an officer to search a vehicle without a warrant "if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Steinman*, 159 F.4th 550, 568 (9th Cir. 2025) (quoting *United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017)). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted) (quoting *United States v. Rodgers*, 656 F.3d 1023, 1028

(9th Cir. 2011)).

**B. Analysis**

As an initial matter, there is a question as to *when* the search began. The Government argues that Officer Lopez had probable cause to search based on numerous factors, including observations he made after going into the vehicle to inspect the partially burned joint. (Doc. 49 at 5.) The Government argues, without analysis, that the initial intrusion was justified under the plain-view doctrine, such that observations made during that intrusion can support the later, more systematic search. (*Id.*) Implicit in this argument is that the second intrusion is the search that is subject to Fourth Amendment scrutiny.

The Court does not agree. "In plain view" is not a talismanic phrase authorizing police officers to seize whatever they might observe. The doctrine permits the warrantless seizure of an object in plain view only when certain requirements are satisfied, including that the officer "have a lawful right of access to the object." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). A lawful right of access can be provided either "by a warrant or by one of the recognized exceptions of the warrant requirement." *United States v. Bulacan*, 156 F.3d 963, 968 (9th Cir. 1998). As noted, the Government here relies on the automobile exception. This exception often provides a lawful right of access to a vehicle during a traffic stop: when officers observe an item that is plainly contraband, that observation establishes probable cause to search the vehicle for further evidence of contraband. *See United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015) (holding that officers lawfully searched a vehicle pursuant to the automobile exception after they saw "off-white rock-like chips" and "a green, leaf-like substance inside a clear bag" in "plain view"); *United States v. Galaviz*, 645 F.3d 347, 357 (6th Cir. 2011) ("The right to search the interior of the vehicle under the automobile exception thus provided officers with a lawful right of access to the car sufficient to satisfy the plain-view exception.").

Here, the Government has a circularity problem. It argues that Officer Lopez had probable cause to search based in part on observations he made during his first intrusion into the vehicle. But, under the plain-view doctrine, that first intrusion had to be supported

by probable cause. If Officer Lopez lacked probable cause, then he lacked the lawful right of access necessary to invoke the plain-view doctrine. This means that the first intrusion—not the second—is the search at issue. *See United States v. Ngumezi*, 980 F.3d 1285, 1288 (9th Cir. 2020) (stating that "a physical intrusion into the interior of a car constitutes a search"). The Government must show that the totality of the circumstances known to Officer Lopez at the time of his initial entry established probable cause. Observations made only as a result of his entry are irrelevant. *Florida v. Harris*, 568 U.S. 237, 249 (2013).

The record demonstrates that Officer Lopez did not have probable cause to search Defendant's vehicle. To begin, possession of small amounts of marijuana is legal under state law, A.R.S. § 36-2852(A)(1), so Officer Lopez did not have probable cause to believe that the joint was contraband. Furthermore, even if marijuana were contraband, Officer Lopez did not have probable cause to believe that that was what he had observed. He did not smell marijuana or see signs that Defendant had recently smoked marijuana. He confirmed that the joint contained marijuana only by picking it up and examining it. (Doc. 56 at 12.) A vague suspicion that a hand rolled cigarette contains marijuana does not constitute probable cause.

Nor was there probable cause to believe that Defendant was driving while "impaired to the slightest degree" by marijuana, *see* A.R.S. §§ 28-1381(A)(3), 36-2852(B) (making that a crime), and that the joint was evidence of that crime. Officer Lopez was aware of the following facts at the time of his entry: (a) Defendant was in a high-crime area (Doc. 56 at 6–7); (b) Defendant dropped his head down when he saw Officer Lopez (*id.* at 7); (c) Defendant rolled through a stop sign but did not swerve, speed, or drive too slowly (*id.* at 7–8, 37); (d) Defendant lit a cigarette and began blowing smoke rapidly as Officer Lopez approached (*id.* at 8); (e) in Officer Lopez's experience, some impaired drivers use cigarette smoke to mask the odor of intoxicants like marijuana or alcohol (*id.* at 8–9); (f) there was a partially burned joint on Defendant's center console, which Officer Lopez suspected might contain marijuana (*id.* at 10, 12, 43); (g) the joint did not emit a red light or smoke, and there was no odor of marijuana emanating from Defendant (*id.* at 43–45);

and (h) Defendant did not exhibit any signs of impairment, such as erratic driving, a flushed face, slurred speech, bloodshot eyes, difficulty concentrating, or difficulty balancing (*id.* at 37–38, 47).[3]

These facts do not add up to probable cause. First, the location of the stop in a high-crime area did not make it more likely that Defendant was driving while impaired. Second, although Defendant's reaction to seeing Officer Lopez could have generated some degree of suspicion that Defendant was engaged in wrongdoing, this factor is weak by itself and did not affirmatively point to impaired driving. *See United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1419 (9th Cir. 1989) (stating that "alleged nervousness is insufficient to create reasonable suspicion"). Similarly, although Defendant's traffic violation could have generated some suspicion, it would not have been much. "[N]ot all traffic infractions imply intoxication," *Navarette v. California*, 572 U.S. 393, 402 (2014), and rolling through a stop sign is common enough. Indeed, Officer Lopez did not see Defendant swerving, speeding, or driving too slowly. *See id.* (recognizing that "certain driving behaviors," like "weaving," are "sound indicia of drunk driving").

Next, Officer Lopez's experience that some impaired drivers use cigarette smoke to hide the smell of intoxicants added little, if anything, to his suspicion. While he observed what he suspected to be a partially burned marijuana joint (he had to actually pick it up and examine it to confirm), he did not smell marijuana or see signs that the joint had recently been lit.[4] The Government suggests that Defendant's cigarette smoke was the reason that Officer Lopez did not notice the smell of marijuana. (Doc. 56 at 88.) But Officer Lopez

---

[3] Officer Lopez testified that he searched for evidence of impaired driving based solely on the suspected marijuana joint. (Doc. 56 at 28–29, 61.) The test for probable cause is objective, however. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). This means that the Court must consider the totality of the circumstances known to Officer Lopez whether he subjectively relied on them or not. *See Florida v. Royer*, 460 U.S. 491, 507 (1983) (plurality opinion) (explaining that an officer's subjective belief that probable cause was lacking did not preclude the state from arguing that the officer's stop was supported by probable cause).

[4] Sergeant Holderness testified that he noticed the odor of marijuana on Defendant. (Doc. 56 at 67.) His bodycam video corroborates his testimony. (Pl.'s Ex. 4 at 1:32–1:35.) This observation is difficult to reconcile with Officer Lopez's testimony that he did not smell marijuana while interacting with Defendant. Regardless, Sergeant Holderness's observation is irrelevant because he made it after Officer Lopez had already gone into Defendant's vehicle.

testified that the odor of marijuana is "very strong" and "distinct," and it is not reasonable to think that blowing cigarette smoke for a few moments would mask it with 100% effectiveness. (*Id.* at 12, 52.) Furthermore, and critically, Officer Lopez observed no signs of impairment. Experience-based suspicion that a driver might be masking an order, absent the odor itself or other corroborating signs of impairment, does not rise to probable cause.

Each of the factors that Officer Lopez might have relied on is weak, and in combination they do not corroborate one another toward the conclusion that Defendant was driving while impaired to the slightest degree by marijuana. *See United States v. Patzer*, 277 F.3d 1080, 1084 (9th Cir. 2002) (holding that officer testimony about the defendant's behavior did not show that the defendant was impaired to the degree required by state law). Furthermore, the totality of the circumstances is not limited to the facts that support police action; it also includes the "facts tending to dissipate probable cause." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023–24 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007)). The facts that might have indicated criminal behavior are not only weak; they are also affirmatively and substantially undermined by other facts such as the absence of an odor or *any* signs of impairment. Officer Lopez therefore lacked probable cause, and his warrantless search violated the Fourth Amendment.

## II. The traffic stop was unlawfully prolonged.

### A. Legal Principles

A traffic stop is a seizure under the Fourth Amendment and thus subject to review for reasonableness. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "To be lawful, a traffic stop must be limited in its scope: an officer may 'address the traffic violation that warranted the stop,' make 'ordinary inquiries incident to the traffic stop,' and 'attend to related safety concerns.'" *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015)). A traffic stop may "last no longer than is necessary" to address these matters, and "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354 (quoting *Royer*, 460 U.S. at 500). Officers may

prolong a stop "to conduct an investigation into matters other than the original traffic violation" only when they "have reasonable suspicion of an independent offense." *Steinman*, 159 F.4th at 561 (quoting *Taylor*, 60 F.4th at 1239). Reasonable suspicion exists when, under the "totality of the circumstances," officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

**B. Analysis**

Officer Lopez stopped Defendant for rolling through a stop sign. (Doc. 56 at 36–37.) So, the traffic stop could last only as long as necessary for Officer Lopez to address that violation. *See Rodriguez*, 575 U.S. at 354 ("A seizure for a traffic violation justifies a police investigation of that violation."). Officer Lopez, though, pivoted almost immediately to an investigation into whether Defendant was driving while impaired by marijuana. (Doc. 56 at 10.) The question is whether, at the moment Officer Lopez diverted his attention away from the traffic mission, he had reasonable suspicion that Defendant was driving while impaired. *See Steinman*, 159 F.4th at 562 (stating that when a stop is prolonged, the key question is whether "the prolongation [was] justified by reasonable suspicion based on the information available at that juncture").

While the reasonable-suspicion standard is "less demanding than that for probable cause," *United States v. Sokolow*, 490 U.S. 1, 7 (1989), the answer is still no. Officer Lopez did not know whether the joint contained marijuana, did not smell marijuana, did not see signs that the joint had recently been lit, and observed no signs of impairment. These circumstances made his experience with impaired drivers masking odors minimally relevant. And again, the totality-of-the-circumstances analysis must account for any facts that detract from reasonable suspicion. Here, although Officer Lopez could reasonably have had his suspicions raised by Defendant's nervous behavior and traffic violation, the circumstances just mentioned strongly cut against the conclusion that Defendant was driving while impaired. In short, Officer Lopez acted on nothing more than a hunch. That is not enough. *Sokolow*, 490 U.S. at 7 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

The Government argues that the stop was not prolonged at all, because Officer Lopez testified that it can take around 20 minutes to issue a ticket for a stop-sign violation, and Defendant was arrested about 20 minutes after the stop began. (Doc. 62 at 5.) But it is irrelevant that the firearm arrest was completed within the time of an average stop. "What matter[s is] the added time, not at what point, in the chronology of the stop, that time was added." *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019) (citing *Rodriguez*, 575 U.S. at 357). No other officer pursued the mission of the traffic stop while Officer Lopez conducted his investigation into marijuana-impaired driving. This pause in the stop-sign investigation makes it clear that time was added to this stop. *Cf. United States v. Harry*, 930 F.3d 1000, 1005 (8th Cir. 2019) (holding that a canine sniff did not unlawfully extend a traffic stop because it was performed while another officer handled the traffic violation). This extension was not supported by reasonable suspicion.

**Conclusion**

The traffic stop violated the Fourth Amendment in two different ways. Therefore, the Court recommends that Defendant's motion to suppress (Docs. 46, 58) be **granted**, and that evidence obtained as a result of the violations—including the firearm that is the subject of this criminal prosecution—be **suppressed**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 7 days to file specific written objections with the district court. The parties have 7 days to respond to objections. The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). A party's objections or response to objections may not exceed 10 pages in length unless otherwise permitted by the district court. LRCrim 12.1(c); LRCiv 7.2(e)(3).

Dated this 8th day of September, 2026.

Maria S. Aguilera

Honorable Maria S. Aguilera
United States Magistrate Judge