**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Jorge Alberto Arvizu,<br>Defendant. | No. CR-25-03318-001-TUC-JCH (MSA)<br>**ORDER** |

Before the Court are Defendant Jorge Alberto Arvizu's First Motion to Suppress (Doc. 46) and Supplemental Motion to Suppress (Doc. 58) and Magistrate Judge Maria S. Aguilera's related Report and Recommendation ("R&R") (Doc. 68). Judge Aguilera recommends the Court grant the motions. The Government objected to the R&R ("Objection") (Doc. 72), and Defendant responded ("Response to Government's Objection") (Doc. 73). For the following reasons, the Court will overrule the Government's Objection in part and adopt the R&R's determination that Officer Lopez searched Defendant's vehicle without probable cause and in violation of the Fourth Amendment. Accordingly, the Court will grant Defendant's First Motion to Suppress (Doc. 46) and suppress the evidence discovered during the unlawful search, including the firearm.

**I. Standard of Review**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If an objection is made, the Court "must review the magistrate judge's findings and recommendations de

novo." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The Court is obligated to review only the specific portions of the report, proposed findings, or recommendations to which the parties object. *See* § 636(b)(1). Objections that merely repeat or rehash arguments already addressed in the R&R are insufficient to trigger de novo review and are instead reviewed for clear error. *See Curtis v. Shinn*, No. CV-19-04374-PHX-DGC-JZB, 2021 WL 4596465, at *5 (D. Ariz. Oct. 6, 2021). If, following review, "the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Morris v. Shin*, No. CV 20-322, 2023 WL 6248830, at *7 n. 5 (D. Ariz. Sept. 26, 2023) (quoting *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)).

## II. Legal Standard

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV; *United States v. Hensley*, 469 U.S. 221, 226 (1985). Warrantless searches are presumptively unreasonable unless they fall under specified exceptions. *United States v. Parkins*, 92 F.4th 882, 888 (9th Cir. 2024). A physical intrusion into a vehicle's interior constitutes a search. *United States v. Ngumezi*, 980 F.3d 1285, 1288–89 (9th Cir. 2020).

The plain view doctrine permits the warrantless seizure of an object in plain view when certain requirements are satisfied, including that the officer has a lawful right of access to the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). A lawful right of access can be provided either by a warrant, or one of the exceptions. *United States v. Bulacan*, 156 F.3d 963, 968 (9th Cir. 1998). Under the automobile exception, officers may search a vehicle without a warrant when the facts known before the search create a fair probability—probable cause—that the vehicle contains contraband or evidence of a crime. *United States v. Steinman*, 159 F.4th 550, 568 (9th Cir. 2025). "Probable cause to search is evaluated in light of the totality of the circumstances." *United States v. Brooks*, 610 F.3d 1186, 1194 (9th Cir. 2010).

Evidence found through an unlawful search is subject to suppression. *Wong Sun v.*

*United States*, 371 U.S. 471, 484–88 (1963); *United States v. Gorman*, 859 F.3d 706, 716–18 (9th Cir. 2017). "The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement." *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

### III. Government's Objection[1]

The R&R concludes that Officer Lopez lacked probable cause to search Defendant's vehicle under the totality of the circumstances. Doc. 68 at 5–8. The Government objects, contending that probable cause rested on three categories of evidence: (1) Defendant lit and smoked a cigarette during the traffic stop, conduct that Officer Lopez believed—based on his experience—to be a used tactic to mask the odor of intoxicants; (2) a half-burnt joint Officer Lopez observed in plain view on the center console that he believed contained marijuana (the "Joint");[2] and (3) five additional "roaches" in the driver's-side door handle, rolling papers, a "rolling tray," ash on the driver's seat, bits of marijuana bud scattered across the driver's seat and floorboards, and a cigarette-shaped burn mark on the driver's seat. Docs. 49 at 2–3; 72 at 3–5, 7. The Court refers to this third category collectively as the "Other Evidence."

#### A. The Government waived reliance on the Other Evidence, and the record shows Officer Lopez saw it only after the search began.

Contrary to the Government's contention, Officer Lopez did not identify the Other Evidence before searching the vehicle. The Government first advanced that position in its Objection, asserting that, "before he first reached into the car," Officer Lopez saw additional roaches in the driver's door handle, loose marijuana leaves and green marijuana buds on the seat and floorboard, a burn mark on the driver's seat, rolling papers, and a "rolling tray." Doc. 72 at 4–5, 7.

---

[1] The R&R provides a thorough summary of the traffic stop on June 15, 2025, and upon reviewing the body-camera footage, the Court agrees with the R&R's factual findings. *See* Docs. 68, 56; Pl.'s Ex. 3. The Court will incorporate by reference the R&R's factual background in full.

[2] The record uses different terms to describe the suspected marijuana cigarette. Because the Government repeatedly referred to it as a "joint" in its Opposition and prior briefings, and to distinguish it from the additional roaches discovered later, the Court refers to it as the "Joint." *See, e.g.*, Docs. 49 at 2–3; 72 at 4.

Before filing the Objection, however, the Government consistently identified only two facts as the basis for Officer Lopez initiating the search: (1) Defendant lit a cigarette during the traffic stop; and (2) the Joint was sitting in plain view on the center console. The Government's Response to Defendant's First Motion to Suppress Evidence (Doc. 49) described the following chronology: Officer Lopez initiated the traffic stop and saw Defendant light a cigarette as he approached the vehicle. Doc. 49 at 2. He then "saw a half-burnt joint on the center console of the car in plain view," requested backup, and asked Defendant to step to the rear of the vehicle. *Id*. Officer Lopez returned to the vehicle and "retrieved the half-burnt joint…to inspect it." *Id*. After inspecting the Joint and determining that it appeared to contain marijuana, Officer Lopez observed a burn mark, ash, and small buds on the driver's seat, as well as small buds on the floorboard. *Id*. He then put on gloves to "conduct a search of" the vehicle. *Id.* at 3. During that search, Officer Lopez found "five (5) roaches (stubs that remain after most of a joint has been smoked) in the driver's inside door handle; a tray and rolling papers; a large orange plastic bag containing opened marijuana products from the driver's floorboard next to the center console; and a loaded Glock 30 .45 caliber pistol wedged between the driver's seat and the center console." *Id*. Nowhere does the Response state or suggest that Officer Lopez saw the Other Evidence before reaching into the vehicle to seize the Joint.

Officer Lopez's testimony at the evidentiary hearing followed essentially the same chronology. When asked when he first saw the Other Evidence in relation to his seizure of the Joint, he testified:

> Q: And what did you do after Sergeant Holderness was there with Mr. Arvizu?
>
> A: I went back to the car to verify if the roach clipping that I found was indeed a marijuana cigarette roach.
>
> Q: Okay. And how did you determine whether it was or wasn't a marijuana cigarette?
>
> A: I picked it up and then I inspected it and I saw a little green bud sticking

out one end where the other end was burnt and then I smelled it and it had the distinct smell of marijuana.

Q: Did you look at the interior of the driver's area at that point?

A: Yes.

Q: And what did you see?

A: I observed multiple roaches throughout the driver's side of the vehicle.

Q: Any other evidence that raised your suspicion of DUI at that point?

A: I also located a, like a small tray with burnt ashes which is called a rolling tray which is often used to roll marijuana cigarettes.

Q: You found that when you first looked in the driver's compartment?

A: Well, once the door was open, it was on the floor between the driver's side, the driver door and the seat of the, the driver's seat.

Doc. 56 at 12–13.

Thus, when Officer Lopez described seeing the additional roaches and rolling tray, he had already described reaching into the vehicle, picking up the Joint, inspecting it, and smelling it. Later, Officer Lopez described putting on gloves to continue the search and, at that time, "collecting marijuana roaches," finding the handgun, and locating green marijuana buds scattered throughout the interior, rolling papers, a rolling tray, and a bag containing open marijuana products. *Id*. at 15. He also described noticing a "distinct burn mark" on the driver's seat. *Id*.

When the AUSA reviewed the body-camera footage with Officer Lopez, his testimony again followed this sequence. Officer Lopez described picking up the marijuana cigarette, smelling it, and then calling for a traffic unit "for suspicion of DUI." *Id*. at 21. He did not mention the Other Evidence during that account. Instead, he next described going to his trunk to "get gloves" to "collect evidence." *Id*. at 22. From there, he described collecting the Other Evidence and noticing the burn mark on the driver's seat. *Id*. at 23–24. When the AUSA later asked Officer Lopez to summarize the evidence on which he relied to conduct a probable-cause search, he responded:

A: The joint, the lit joint.
Q: Anything else?
A: The multiple lit joints that were located in the car and the green buds.[3]

*Id*. at 29.

At the conclusion of the hearing, the AUSA made a brief closing argument:

> …Officer Lopez searched Mr. Arvizu's car…because he had probable cause. That probable cause was based on the plain view spot of the half smoked marijuana joint that was on the center console, the fact that his lit cigarette was, in Officer Lopez's opinion, potentially lit when he got stopped to mask the odor of intoxicants like marijuana smoke, and I would point the court to Exhibit 3 that shows that Mr. Arvizu, when he's first pulled over, is continuously pushing the cigarette itself toward Officer Lopez and getting the smoke to kind of come out of the car, the cigarette smoke. I'll just leave it there, Your Honor. Since we're going to file briefs, I don't want to take up too much of the court's time.

*Id.* at 88.

Consistent with that closing argument, the Government's Response in Opposition to Defendant's Supplemental Motion to Suppress (Doc. 62) did not contend that the Other Evidence supported probable cause. Instead, it asserted: "After observing Arvizu's behavior and finding a half-burnt marijuana joint in plain view on the center console, Officer Lopez conducted a search of Arvizu's car based upon probable cause that additional evidence of the crime of DUI would be found." Doc. 62 at 2.

The Government's position before the Magistrate Judge was unambiguous: the lit cigarette and the Joint supplied probable cause for the search. The Government had several opportunities—such as in its initial response, during the evidentiary hearing, in its closing

[3] This general answer is the only portion of Officer Lopez's testimony that could be read to suggest that he relied on the additional roaches and green buds when initiating the search. It does not establish when he first saw those items. As explained later, the Court finds that he did not see them until after the search began. Even if he had seen them earlier, they would provide additional evidence that marijuana was present in the vehicle, not that Defendant was impaired while driving.

argument, and other briefings—to argue Officer Lopez saw the Other Evidence before searching the vehicle and the Other Evidence supported probable cause. It did not do so.

A district court has discretion to decline to consider evidence or arguments raised for the first time in objections to an R&R. *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000); *United States v. Song Ja Cha*, 597 F.3d 995, 1003 n.7 (9th Cir. 2010). The Government's new reliance on the Other Evidence is not a clarification or refinement of its earlier argument. It substitutes a new probable-cause theory for the two-fact theory the Government presented to the Magistrate Judge and does so only after the R&R rejected that earlier theory. The Court declines to permit the Government to recast its probable-cause theory at this stage and exercises its discretion to treat the new argument as waived. *See Mujahid v. Shinn*, No. CV-21-00115-TUC-SHR, 2023 WL 2813811 (D. Ariz. Apr. 6, 2023) (holding that arguments raised for the first time in objections to an R&R were waived). To do otherwise would unfairly prejudice the Defendant.

Even if the Government had not waived the argument, the record does not support the Government's new position. Although portions of Officer Lopez's testimony are arguably ambiguous about when he saw the Other Evidence, his overall testimony, considered together with the body-camera footage, shows that he did not see it until after he reached into the vehicle and seized the Joint. Before reaching into the vehicle, Officer Lopez briefly swept his flashlight across the interior, focusing primarily on the center console. He did not pause over or closely inspect the driver's seat or floorboard. Such a cursory scan would not have allowed him to identify a cigarette-shaped burn mark or small pieces of green plant material. Although he directed his flashlight toward the interior door handle for a moment, the handle appeared to be filled with paper that obscured its contents. Nothing about Officer Lopez's demeanor suggests he saw anything significant beyond the Joint before reaching into the vehicle. Pl.'s Ex. 3 at 4:30–4:40.

Further, the Government bears the burden of proving that the warrantless search was lawful, and Officer Lopez never clearly testified that he saw the Other Evidence before beginning the search. To the extent the chronology remains ambiguous, that ambiguity

does not satisfy the Government's burden. *See Job*, 871 F.3d at 859–60 (holding that an unclear record did not establish by a preponderance that officers possessed the information allegedly justifying a vehicle search before conducting it); *United States v. Caseres*, 533 F.3d 1064, 1075–76 (9th Cir. 2008) (rejecting a justification for a warrantless vehicle search because the record did not establish that the officer possessed the necessary information before ordering the search).

Considering the record as a whole, the Court finds that Officer Lopez did not see the Other Evidence until after he initiated the search by reaching into the vehicle to seize the Joint. Therefore, the Other Evidence cannot support a finding that probable cause existed when the search began.

**B. Under the totality of the circumstances, the cigarette and the Joint did not establish probable cause to search defendant's vehicle.**

The search began when Officer Lopez reached into Defendant's vehicle to seize the Joint. Doc. 68 at 5–6; *see Ngumezi*, 980 F.3d at 1288–89 (holding that a physical intrusion into a vehicle's interior constitutes a search). Probable cause must be assessed based solely on the facts known to Officer Lopez before that intrusion; evidence discovered after the search began cannot retroactively justify it. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."); *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011) (explaining that probable cause must be supported by the objective facts known to the officer at the time of the search). Thus, the Government is left with only two facts to establish probable cause: (1) Defendant lit a cigarette after he was stopped, which Officer Lopez believed was a tactic used to mask the odor of intoxicants; and (2) Officer Lopez saw the Joint, which he believed contained marijuana and had been smoked by Defendant.

Arizona law permits adults who are at least twenty-one years old to possess and transport one ounce or less of marijuana. A.R.S. § 36-2852(A)(1). But Arizona law prohibits driving while under the influence of a drug only when the driver is "impaired to the slightest degree." A.R.S. § 28-1381(A)(1). Therefore, under the Government's DUI

theory, the relevant question was not merely whether Defendant possessed or had used marijuana, but whether he had driven while impaired. The cigarette and the Joint supported a suspicion of marijuana use; neither, without more, showed impairment.

*United States v. Patzer* is instructive here. There, the officer observed that the driver had bloodshot, glassy eyes, exhibited eyelid tremors during a sobriety test, and admitted that he had smoked marijuana. Nevertheless, the Ninth Circuit held that the officer lacked probable cause to arrest the driver for marijuana DUI because the driver's "driving and comportment did not evidence any impairment." 277 F.3d 1080, 1082–84 (9th Cir. 2002). The court explained that "there is no basis to conclude that impairment may be presumed upon admission of use of a non-narcotic drug." *Id*. at 1084.

Although *Patzer* applied an Idaho statute requiring impairment of the driver's ability to operate a vehicle safely, Arizona's statute likewise requires evidence of impairment, albeit only "to the slightest degree." A.R.S. § 28-1381(A)(1). The statutes differ as to the degree of impairment required, but both require *evidence* of impairment. And the evidence here is substantially weaker than in *Patzer*. Defendant did not admit to using marijuana. The R&R found that Officer Lopez observed no signs of impairment during his initial conversation with Defendant or as Defendant exited the vehicle and walked to the patrol vehicle. Doc. 68 at 2–3 & n.2. At the evidentiary hearing, Officer Lopez—who was trained to identify signs of impairment—confirmed that he observed no unusual driving, bloodshot or glassy eyes, slurred speech, flushed face, difficulty concentrating, difficulty balancing, or other indication of impairment.[4] Doc. 56 at 37–38, 47. Thus, although the lit cigarette

[4] Although no particular investigative step is mandatory, officers may assess impairment through observations, questioning, and field sobriety testing, considering the resulting facts together to determine whether probable cause exists. *State v. Superior Ct. In & For Cochise Cnty.*,149 Ariz. 269, 274–76 (1986) (holding that the driver's driving, appearance, alcohol odor, and performance on sobriety tests, considered together, established probable cause to arrest); *State ex rel. Hamilton v. City Court of Mesa*, 165 Ariz. 514, 518 n.3 (1990) ("Field sobriety tests ... show[ ] clues or symptoms that correlate to impairment."); *State v. Campoy*, 214 Ariz. 132, ¶¶ 10–13 (App. 2006) (holding at the evidentiary hearing that field sobriety test performance is relevant evidence of impairment and that officers may describe observed cues of impairment); *Ishak v. McClennen*, 241 Ariz. 364, ¶¶ 14–20 (App. 2016) (holding, in the medical-marijuana affirmative-defense context, that actual impairment may be assessed through admissible evidence concerning the individual driver and need not be resolved solely through expert testimony about THC concentration).

and the Joint may have suggested marijuana use, the totality of the circumstances did not establish a fair probability that Defendant had driven while impaired or that the vehicle contained evidence of that offense.

It is important to recognize that Officer Lopez had other options for investigating his suspicion that Defendant was impaired. Because the suspected offense was impaired driving, Officer Lopez could have continued questioning Defendant and observing his speech, coordination, and behavior. For example, he could have asked Defendant about the Joint sitting on the center console. He also could have examined the vehicle's interior more carefully from outside the vehicle using his flashlight. Most obviously, Officer Lopez could have allowed for the Drug Recognition Expert ("DRE") certified officer he had called to investigate Defendant for impaired driving to evaluate Defendant. *Id.* at 21. These less intrusive investigative measures would have allowed Officer Lopez to develop—or dispel—his suspicion before searching the vehicle. Instead of pursuing those measures to develop his suspicion, Officer Lopez entered and searched Defendant's vehicle.

Officer Lopez lacked probable cause to conduct the search. Because the firearm was discovered during the unlawful search, it must be suppressed. *See Ngumezi*, 980 F.3d at 1290–91 (holding that a loaded handgun found under the driver's seat was subject to exclusion because "[t]he exclusionary rule…requires courts to suppress any evidence obtained as a 'direct result of an illegal search or seizure'" (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016))).

## IV. Conclusion

Officer Lopez lacked probable cause to search Defendant's vehicle. The Court adopts the R&R's findings of fact and conclusions of law regarding the probable-cause determination and recommendation to suppress. This resolves the matter before the Court. Therefore, the Court need not determine whether there was reasonable suspicion to prolong the stop to investigate Defendant for DUI.

///

///

Accordingly,

**IT IS ORDERED ADOPTING** in part the R&R (Doc. 68) as set forth above.

**IT IS FURTHER ORDERED OVERRULING** the Government's Objection (Doc. 72) as to probable cause.

**IT IS FURTHER ORDERED GRANTING** Defendant's First Motion to Suppress (Doc. 46).

**IT IS FURTHER ORDERED DENYING** the Supplemental Motion to Suppress as moot (Doc. 58).

**IT IS FURTHER ORDERED SUPPRESSING** the firearm and other evidence obtained as a result of the unlawful vehicle search.

**IT IS FINALLY ORDERED SETTING** this matter for a status conference on **October 1, 2026**, at **1:30 P.M.**, for 30 minutes. At that time, the Government should be prepared to tell the Court whether it intends to proceed to trial.

Dated this 29th day of September, 2026.

John C. Hinderaker
United States District Judge